**Dr. Stanley C. GRANDON,
et al., Plaintiffs,**

v.

**MERRILL LYNCH AND CO.,
INC., Defendant.**

**No. 95 Civ. 10742(SWK)(RLE).**

United States District Court,
S.D. New York.

June 3, 2002.

---

108

Christopher Lovell, Lowell & Stewart, LLpP, New York City, for plaintiffs.

A. Robert Pietrzak, Sidley, Austin, Brown & Wood, L.L.P., New York City, Andrew W. Stern, for defendants.

## MEMORANDUM OPINION & ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

Before this Court is a letter application by plaintiffs, Dr. Stanley C. Grandon ("Grandon") and other similarly-situated plaintiffs (collectively, "the plaintiffs"), seeking to obtain the algorithms used by Merrill Lynch ("Merrill") during the class period for the calculation of equity commissions and municipal bond markups. For the following reasons, the request is **GRANTED**.

### II. BACKGROUND

Grandon initiated this case with the filing of a complaint on December 20, 1995, alleging violations of the Securities Exchange Act of 1934 ("the Act"), on behalf of a class of persons who were customers of Merrill and who purchased municipal bonds through or

from Merrill between December 21, 1992, and December 20, 1995. The instant request follows from Grandon's filing of a second amended complaint on November 17, 1999, alleging violations of the Act as well as breach of fiduciary duty, and requesting an accounting on behalf of a class of persons who were public, retail customers of Merrill and purchased class bonds through or from Merrill between December 21, 1992, and December 20, 1995. According to plaintiffs, Merrill charged excessive markups and failed to disclose the markups in violation of section 10(b) of the Act, and Securities and Exchange Commission Rule 10b–5.

On May 8, 2002, the parties submitted letter briefs to the Court concerning Merrill's commission algorithms used for the calculation of equity commissions and municipal bond markups during the class period. According to plaintiffs, the algorithms are "simple, short, non-burdensome documents that reflect [Merrill's] charges for equities during the Class Period, and have long been requested by the plaintiffs." Merrill objects to the production of the documents on the ground that before the plaintiffs are entitled to production of the algorithms, which Merrill asserts is class discovery, they must demonstrate the bases upon which the case can properly be treated as a class action. Merrill argues that, because the markups are determined on a case-by-case basis, a class case is inappropriate. Merrill also argues that plaintiffs have failed to substantiate any of the allegations in the second amended complaint.

The written submissions were supplemented by oral argument on May 9, 2002.

### III. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part that, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Merrill's argument that the algorithms are "class discovery" does not fully addresses the relevance of plaintiffs' request.

Relying on a prior decision by the Second Circuit in this case, see Grandon v. Merrill

*Lynch & Co.,* 147 F.3d 184, 190, 191 (2d Cir.1998), and quoting *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 535 (2d Cir.1999), Merrill asserts that the appropriateness of the markups should be determined on a case-by-case basis, and "that courts considering allegations of fraudulently excessive markups must 'consider[ ] each transaction *individually,* in light of all relevant circumstances.'" Since individual transactions need to be examined to determine the fairness of the markups, class certification is inappropriate. Furthermore, Merrill argues that, in considering the reasonableness of prices charged by municipal securities dealers, courts should start their inquiry with the following relevant factors as enunciated in *Grandon:*

> (1) 'the best judgment of the broker, dealer or municipal securities dealer as to the fair market value of the securities at the time of the transaction'; (2) 'the expense involved in effecting the transaction'; (3) 'the fact that the broker, dealer, or municipal securities dealer is entitled to a profit'; and (4) 'the total dollar amount of the transaction.' ... (5) the availability of the security in the market; (6) the price or yield of the security; and (7) the nature of the professional's business.

147 F.3d at 190 (*quoting* MSRB[1] Rule G–30, MSRB Manual (CCH) ¶ 3646, at 5157, and *citing* MSRB Interpretations of Rule G–30, Report on Pricing, (Sept. 26, 1980), MSRB Manual (CCH) ¶ 3646, at 5160). According to Merrill, plaintiffs focus on only one of the above factors in seeking the algorithms to show that Merrill's markups violated an industry standard.

The pertinent inquiry, however, is whether the requested information is relevant to the claims of the plaintiff. While Merrill asserts that a determination must be made on a case-by-case basis and that multiple factors must be considered by the court, it fails to demonstrate that the algorithms are not a factor in even these individual determinations. An item of discovery relevant to only one factor in a multiple-factor analysis—in this case, the algorithms—must be produced.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' request for the production of algorithms used for the calculation of equity commissions and municipal bond markups during the class period is **GRANTED**, and Merrill is ordered to produce the algorithms by **June 7, 2002.**

---

1. The Municipal Securities Rulemaking Board ("MSRB"), a self-regulating organization created by Congress in 1975, and supervised by the SEC, is the primary regulatory authority in the municipal securities market. 15 U.S.C. § 78o–4(b).

The MSRB is authorized to propose and adopt rules to effectuate the purposes of the Exchange Act with respect to transactions in municipal securities. *Id.* § 78o–4(b)(2). *Grandon,* 147 F.3d at 190.